UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKE MICHIGAN COLLEGE and
MILORAD SUVACAROV,

     Petitioners,

                              Case No. 1:09-cv-327

v                                 HON. JANET T. NEFF

UNITED STATES DEPARTMENT OF
LABOR, et al.,

     Respondents.

_____/


**OPINION**


Pending before the Court is Petitioners' April 3, 2009 Emergency Petition for Writ of Mandamus, petitioning this Court for an order against Respondents "directing that [the Department of Labor] adjudicate Petitioner's previously-filed ETA 9089 Labor Certification Application immediately" (Dkt 1).  Respondents filed an answer in opposition to the Petition on April 13, 2009, asserting that this Court lacks jurisdiction over the subject matter of the Petition (Dkt 7).  Having considered the pleadings, the Court determines that the Petition is properly dismissed for lack of subject matter jurisdiction.

I.  BACKGROUND

Petitioner Milorad Suvacarov is a citizen of Serbia and Montenegro.  Since 2002, he has been employed as a "Programmer Analyst" by Petitioner Lake Michigan College (LMC) in Benton

1

Harbor, Michigan (Pet. 2).  Suvacarov began working for LMC on an H-1B nonimmigrant worker visa, petitioned for by LMC.  Under § 1101(a)(15)(H) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.,* an alien may be authorized to come to the United States temporarily to perform services for an employer, if petitioned for by that employer.  Under this "nonimmigrant" category, the alien may be classified under § 1101(a)(15)(H)(i)(b) of the Act as an alien who is coming to perform services in a specialty occupation, i.e., an alien with an "H-1B" nonimmigrant worker visa.  *See* 8 C.F.R. § 214.2(h)(1)(i) (describing classifications).  Suvacarov's H-1B visa was valid by extension until October 18, 2008 (Pet. 2).

Suvacarov seeks to adjust his status to that of a lawful permanent resident based upon his employment opportunities in the United States.  There are three steps in the employment-based adjustment-of-status process.  *See generally Matovski v. Gonzales,* 492 F.3d 722, 726 -27 (6th Cir. 2007).  The alien's employer initiates the first two stages.  First, the employer files an Application for Alien Employment Certification with the Department of Labor.  The Secretary of Labor determines and certifies to the Secretary of State and Attorney General two facts:  (1) "that there are not sufficient workers who are able, willing, qualified ... and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor;" and (2) that "the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed."  8 U.S.C. § 1182(a)(5)(A)(i).  *See e.g., Oriental Rug Importers, Ltd. v. Employment and Training Admin.,* 696 F.2d 47 (6th Cir. 1982) (holding that the decision of the Department of Labor in denying the plaintiff a labor certification was "not arbitrary or capricious" where the plaintiff, an importer and vendor of quality oriental rugs who was seeking an experienced buyer, failed to carry its burden of proof).

If an approved labor certification is issued by the Department of Labor, then the second step is for the employer to file an I-140, Petition for Alien Worker, with Citizenship and Immigration Services (CIS).[1]  The CIS examines the evidence filed with the petition to determine the eligibility of the alien.  *See* 8 U.S.C. § 1153(b) ("Preference allocation for employment-based immigrants").

Last, if the I-140 is approved, then the alien files an I-485, Application to Register Permanent Residence or Adjust Status, which is the third and final step in the process.  Section 1255(a) of the INA establishes three requirements for an alien to become eligible for a status adjustment to an alien lawfully admitted for permanent residence:  "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."  8 U.S.C. § 1255(a).   If the alien satisfies each of these requirements, then the I-485 will be approved and the alien will become a lawful permanent resident of the United States.

On October 11, 2008, only one week before Suvacarov's H-1B nonimmigrant worker visa would expire, LMC filed a labor certification application on Suvacarov's behalf (Resp. Exh. A). Petitioners' intentions are to receive and file an approved labor certification application along with a visa petition (the I-140) and an application to adjust his status to a permanent resident (the I-485) (Pet. 3-4).  However, their labor certification application remains pending with the Department of Labor, and approval of the labor certification by the Secretary of Labor is a condition precedent to the second and third steps of the employment-based adjustment-of-status process.   Until his

---

[1]  The functions of the Immigration and Naturalization Service, which was part of the United States Department of Justice, were transferred in 2003 to the Department of Homeland Security and divided between the Bureau of Citizenship and Immigration Services (CIS) and the Bureau of Customs and Enforcement (ICE).

application is approved, Suvacarov is not even eligible to apply for an employment-based immigrant visa. *See* 8 U.S.C. § 1153(b)(3)(C).

Pursuant to 8 U.S.C. § 1255(k)(2), an employment-based visa applicant cannot seek an adjustment of status if the applicant has been out of status for an amount of time in excess of 180 days. Petitioners represent that April 16, 2009 is the 180th day following Suvacarov's last day of lawful status in the United States and that Suvacarov will not be permitted to proceed with his plan to seek an adjustment if his labor certification application is not adjudicated by that date (Pet. 4).

On April 3, 2009, Petitioners filed the instant "Emergency Petition for Writ of Mandamus," petitioning this Court for an order "directing that [the Department of Labor] adjudicate Petitioner's previously-filed ETA 9089 Labor Certification Application immediately." Hence, the subject matter of this Petition concerns the first step of the three-step adjustment-of-status process for nonimmigrant workers.

Respondents answered the Petition, advocating for its dismissal for lack of subject matter jurisdiction. Respondents assert that the Department of Labor reviews labor certification applications "in the order they are received" and that Petitioners have "no right to jump to the front of the line." In support of their assertions, Respondents attached the Declaration of William Carlson. Carlson administers the Office of Foreign Labor Certification (OFLC) within the Department of Labor. Carlson represents that the OFLC reviews applications on a first in/first out (FIFO) basis, that the OFLC is currently reviewing applications filed in August 2008, and that Suvacarov's application is in the review queue (Resp. Exh. B ¶¶ 6, 10).

Carlson indicates that the OFLC has "a long-standing policy against expediting the review of any particular application based on the individual circumstances of the employer or the

4

beneficiary of the application" (Resp. Exh. B ¶ 10). Carlson represents that the OFLC "does not have the resources, financial or human capital, to verify the accuracy of the underlying facts related to an expedited request and no expertise in evaluating their significance" (*id.* ¶ 13). Carlson opines that "[m]any years of experience in administering the permanent labor certification program have convinced the OFLC that commencing processing of applications on a FIFO basis is not only the fairest and most equitable means for processing labor certification applications but also the most efficient means for processing the overall pool of applications, thus benefitting the user community as a whole" (*id.* ¶ 15).

Respondents cannot predict when an analyst will be assigned to Petitioners' case. Respondents concede that "[w]hile it may be true that 180 days may pass before the application is adjudicated and that Petitioner Suvacarov will no longer be able to seek an adjustment of status through LMC, this factor is outweighed by all of the agency's policy reasons for not [expediting] applications" (Resp. 16).

## II. DISCUSSION

"[F]ederal Courts, being courts of limited jurisdiction, must examine their subject-matter jurisdiction 'throughout the pendency of every matter before them.'" *Children's Healthcare is a Legal Duty, Inc. v. Deters,* 92 F.3d 1412, 1419 n.1 (6th Cir. 1996) (quoting *In re Wolverine Radio Co.,* 930 F.2d 1132, 1137 (6th Cir. 1991)). "The established rule is that a plaintiff, suing in federal court, must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough,* 270 U.S. 456, 459 (1926).

Petitioners proffer two statutory bases for this Court's exercise of jurisdiction over the subject matter of their Petition: the Mandamus and Venue Act, 28 U.S.C. § 1361, and the judicial review provisions of the Administrative Procedures Act (APA), 5 U.S.C. §§ 701(b)(2), 702 (Pet. 4-6). Respondents dispute both claimed bases, and this Court agrees that neither provides for the proper exercise of jurisdiction over this matter.

## A. Mandamus and Venue Act

The Mandamus and Venue Act provides this Court with original jurisdiction of any action in the nature of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The existence of jurisdiction under section 1361 is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Maczko v. Joyce,* 814 F.2d 308, 310 (6th Cir. 1987).

For there to be a "duty owed to the plaintiff" within the meaning of the Mandamus Act, there must be a "mandatory or ministerial obligation." *Maczko, supra* (quoting *Short v. Murphy,* 512 F.2d 374, 377 (6th Cir. 1975)). "If the alleged duty is discretionary or directory, the duty is not owed." *Id.* "The prerequisite that a duty be owed to the plaintiff has been read narrowly to require that the officer or employee of the United States owe a 'ministerial duty that [is] compelled by law.'" *Ryon v. O'Neill,* 894 F.2d 199, 205 (6th Cir. 1990) (quoting 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3655 (2d ed. 1985)).

Petitioners do not argue that the Department of Labor is abusing its discretion in the manner in which it processes labor certification applications. Instead, Petitioners' position is that the Department of Labor has a "*non*-discretionary, ministerial duty to act" (Pet. 9). Specifically,

Petitioners claim that the labor certification application process is "completely automated" and processed online "by a complex software matrix that decides the application" (*id.* 6, 9).  Moreover, Petitioners opine that Suvacarov's ability to stay and work in the United States ... justifies this Court's immediate intervention" (*id.* 8).

Respondents characterize Petitioners' description of their review process as "false." According to Respondents, a Certifying Officer makes a discretionary determination about whether to grant labor certification applications, not a computer program (Resp. 8).  Specifically, Carlson represents that its regulatory guidelines require the OFLC to make "numerous determinations in connection with the review of an application, including, but not limited to:  the bona fides of the employer and the job offered, the employer's job requirements, the employer's efforts to recruit U.S. workers, and the qualifications of the alien" (Resp. Exh. B ¶ 7).

The Sixth Circuit Court of Appeals has not yet addressed the precise subject matter jurisdiction question before this Court, although the Sixth Circuit did, in reviewing a petitioner's request for a continuance of removal proceedings, have occasion to comment upon the four-year delay of the Department of Labor in processing the petitioner's labor certification application.  *See Cordova v. Gonzales,* 245 Fed. Appx. 508 (6th Cir. 2007) (affirming the decision of the Board of Immigration Appeals to deny the petitioner's request for a continuance of removal proceedings pending the delay in adjudicating his labor certification application).

This Court notes that four judges sitting in the Eastern District of Michigan have addressed the jurisdictional question within the context of delayed adjudications of I-485 applications to adjust status, i.e., the third step in the employment-based adjustment-of-status process.[2]  *See Shen v.*

---

[2]  Indeed, the district court in *Kiromi, supra* at *2, noted that the action before it was "one among many cases being filed across the country challenging the pace at which Defendants are

*Chertoff,* 494 F. Supp. 2d 592 (E.D. Mich. 2007) (Friedman, C.J.); *Mouawad v. District Director, USCIS Detroit,* No. 08-15136, 2009 WL 174940 (E.D. Mich. Jan. 23, 2009) (Roberts, J.); *Kuchumov v. Chertoff,* No. 07-12277, 2007 WL 2782045 (E.D. Mich. Sept. 24, 2007) (Duggan, J.); and *Kiromi v. District Director, USCIS Detroit,* No. 07-10446, 2007 WL 2049521 (E.D. Mich. July 13, 2007) (Cook, J.).

These "third-step decisions" are of marginal assistance in deciding this "first-step case," but it is notable that the judges of the Eastern District were uniform in rejecting the plaintiffs' arguments that the CIS has a non-discretionary duty to immediately adjudicate the adjustment-of-status applications before it. The district courts relied, in whole or in pertinent part, on the fact that the INA contains no mandatory time constraint by which an application must be adjudicated.

Absent controlling precedent, this Court's analysis rests on applying the requirements for issuing a writ of mandamus to the facts before it. This Court finds that Petitioners have not established a clear and certain claim to an "immediate" adjudication of their labor certification application. The Department of Labor's obligation to do the requested act cannot be said to be "clear, peremptory, defined or ministerial" within the meaning of § 1361. *See Maczko,* 814 F.2d at 310. Therefore, this Court concludes that the Mandamus Act does not provide this Court with jurisdiction to issue the writ Petitioners request.

## B. APA

Turning to Petitioners' second proffered basis for subject matter jurisdiction, this Court notes as a threshold matter that "the APA, by itself, does not provide an independent basis for

---

adjudicating I-485 applications" and that district courts are "divided in their judgment as to whether the courts possess subject matter jurisdiction under the APA and/or federal mandamus statute." *See also* Sasser, 76 FORDHAM L. REV. 2511 (2008), Note, "Waiting in Immigration Limbo: The Federal Court Split Over Suits to Compel Action on Stalled Adjustment of Status Applications."

subject-matter jurisdiction. *Califano v. Sanders,* 430 U.S. 99, 105-06, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).  However, 28 U.S.C. § 1331 (federal question statute), in conjunction with the APA, does allow federal district courts to establish subject-matter jurisdiction." *Shen,* 494 F. Supp. 2d at 596 n.5.

Under the APA, an agency has a duty to conclude a matter presented to it within a "reasonable time." 5 U.S.C. § 555(b).  The APA allows a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  Section 702 of the APA also provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

However, the APA precludes judicial review to the extent "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  Moreover, the Supreme Court has construed § 701(a)(2) of the APA as advising against review " if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830 (1985).

While the APA requires an agency to act within a "reasonable time," neither the APA nor the INA provide any guidelines for determining at what point the Department of Labor's pace in adjudicating a labor certification application becomes unreasonable.  In this regard, this Court again notes that the district courts of the Eastern District of Michigan rejected subject matter jurisdiction claims not only under the Mandamus Act but also under the APA.  The courts reasoned that judicial review under the APA is not available as the process for adjudicating adjustment-of-status applications is governed by agency discretion. *See Shen,* 494 F. Supp. 2d 596-97; *Mouawad, supra*

9

at *6-8; *Kuchumov, supra* at *3. Because the "reasonableness" with which labor certification applications are to be processed is likewise not readily ascertainable but subject to various interpretations, this Court concludes that the matter of processing is instead a matter committed to agency discretion. Accordingly, this Court is precluded from exercising review in this matter.

### III. CONCLUSION

For the reasons stated above, the Court concludes that it lacks subject-matter jurisdiction over the Petition. According, the Petition is dismissed.

An Order consistent with this Opinion will be entered.

Date: May 1, 2009                                    /s/ Janet T. Neff_____
                                                     JANET T. NEFF
                                                     United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LAKE MICHIGAN COLLEGE and
MILORAD SUVACAROV,

       Petitioners,

v

UNITED STATES DEPARTMENT OF
LABOR et al.,

       Respondents.

_____/

Case No. 1:09-cv-327

HON. JANET T. NEFF


**<u>ORDER  OF  DISMISSAL</u>**


In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that Petitioner's Emergency Petition for Writ of Mandamus

(Dkt 1) is DISMISSED for lack of subject matter jurisdiction and this action is TERMINATED.


Date: May 1, 2009

     /s/ Janet T. Neff_____
JANET T. NEFF
United States District Judge